## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**ROCKY MOUNTAIN RECREATIONAL COMMUNITIES, LLC,**

Debtor.

_____

**RICHARD J. SAMSON, TRUSTEE,**

Plaintiff,

-vs-

**ROCKY MOUNTAIN RECREATIONAL COMMUNITIES, LLC, et al.,**

Defendants.

Case No. **10-61045-7**

Adversary Proceeding No. **12-00020**

## *MEMORANDUM OF DECISION*

At Butte in said District this 23rd day of October, 2012.

In this adversary proceeding a Motion to Dismiss Counts One, Three, Four, Five, and Six of the complaint based upon F.R.B.P. Rule 7012(b) (applying Fed. R. Civ. P. 12(b)(6) in adversary proceedings), for failure to state a claim upon which relief can be granted, was filed on July 6, 2012, by Defendants GSI Corporation ("GSI"), G.E.P., Inc. ("G.E.P."), Glenn E. Patch Trust ("Patch Trust"), Glenn E. Patch ("Patch"), Timothy Maloney ("Maloney"), Virginia Porter ("Porter"), and Daniel Manning ("Manning") (together the "Movants" or "Defendants"). The Motion also seeks to dismiss Count Sixteen for lack of standing under Rule 12(b)(1). Plaintiff filed a response in opposition. The Movants filed a reply. A hearing filed on the Motion to

1

Dismiss was held at Missoula on September 6, 2012.  The Plaintiff/Trustee Richard J. Samson appeared and stated that the parties wish to submit the Motion to Dismiss on briefs.  The Court agreed and took the matter under advisement.  The Court has reviewed the Motion, response, reply, briefs, and applicable law for dismissal under Rule 12(b).  For the reasons set forth below, Defendants' Motion to Dismiss based upon Rule 12(b)(6) and 12(b)(1) will be denied.

Defendants admit that venue of this adversary proceeding is proper in this district, but they deny that this Court has jurisdiction of this adversary proceeding, and deny that the Plaintiff's claims for relief are core proceedings under 28 U.S.C. § 157(b)(2).  This Court has original but not exclusive jurisdiction of all civil proceedings arising in or related to cases under Title 11 of the United States Code.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

The case dockets reflect certain undisputable background facts.  The Debtor Rocky Mountain Recreational Communities, LLC ("RMRC" or "Debtor") filed a voluntary Chapter 7 petition on May 3, 2010.  The summary of schedules filed with the petition lists assets in the total amount of $1,304,190.30 and total assets in the amount of $2,035,363.35.  The Plaintiff Samson was added to the case as Trustee.

The Trustee filed the complaint commencing this adversary proceeding on May 2, 2012, naming as Defendants the Debtor RMRC, GSI, G.E.P., Patch Trust, Patch, Mahoney, Porter, Manning, and John Does 1-50.  The complaint avers seventeen (17) claims for relief:  Count One (avoidance and recovery of fraudulent transfer under 11 U.S.C. §§ 548 and 550 from G.E.P., Patch Trust or any John Doe ); Two (avoidance and recovery of fraudulent transfer under 11 U.S.C. § 544, § 550 and MONT. CODE ANN. § 31-2-333(1)(a) from G.E.P., Patch Trust or any

2

John Doe); Three (avoidance and recover of fraudulent transfers under § 548 and 550 from G.E.P. and/or the Patch Trust); Four (avoidance and recovery of fraudulent transfer under § 31-2-333(1)(b) from G.E.P., Patch Trust or any John Doe); Five (fraudulent transfers under § 31-2-334(1) from G.E.P. and/or Patch Trust); Six (fraudulent transfers under § 31-2-334(2) from G.E.P. and the Patch Trust); Seven (Constructive Trust against G.E.P, Patch Trust and John Does 1-50); Eight (Bailment against G.E.P. and/or Patch Trust); Nine (director and officer and trustee/fiduciary liability against Patch, Mahoney and/or Porter); Ten (breach of fiduciary and other duties by G.E.P., Patch, Mahoney and/or Porter); Eleven (Breach of duties against Patch, Mahoney and/or Porter); Twelve (breach of duties including fiduciary duties against Patch, Mahoney, Porter and Manning); Thirteen (unjust enrichment against G.E.P. and/or Patch Trust); Fourteen (§ 548 and § 550 claims against Manning); Fifteen (claim against Manning based on § 31-2-333(1)(b); Sixteen (alter ego claim against GSI, G.E.P., Patch Trust, and Patch and John Does); and Seventeen (other claims against John Does).  Attached to the complaint is an Exhibit ("Ex.") "A" listing approximately twenty-three (23) wire transfers from RMRC to GEP, Inc., and/or Patch Trust beginning 11/1/2005 through 7/28/2008.

Defendants filed an amended answer on June 11, 2012, admitting and denying various averments of the complaint, asserting affirmative defenses and a demand for a jury trial. Defendants do not consent to entry of final orders or judgment by this Court on any of the claims asserted in the Complaint[1].

From the parties' pleadings additional admitted facts are established.  RMRC and GSI are

---

[1]Given Defendants' stance, the question eventually must be addressed as to whether this Court lacks the constitutional authority to enter a final judgment under the holding of *Stern v. Marshall*, _ U.S. _, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

entities established under Montana law.  GSI was created in February 1996.  RMRC was created in 2000.  GSI was RMRC's sole member at least for a period of time.  GSI transferred assets to RMRC, where certain of the assets were used by RMRC in the development and construction of improvements in the Harbor Village development located within or near the Eagle Bend golf course development outside of Bigfork, Montana.

G.E.P. is a Florida corporation.  The Patch Trust is a Florida revocable trust domiciled in Florida, and is a shareholder of GSI and G.E.P.  Glenn E. Patch is an individual and resident of Florida, who is the trustee and a beneficiary of the Patch Trust.

Mahoney is an individual and resident of Missouri who served as an officer and director of GSI and G.E.P., but was not a shareholder of those entities and not a member of RMRC.  Porter is an individual and resident of Florida who has been an officer and director of G.E.P. and GSI.  Manning is an individual and resident of Montana who was the designated agent in Montana for RMRC, and served as general manager of RMRC.

RMRC executed a buy sell agreement with Gary and Susan Ewing ("Ewings") to sell Ewings a residential unit at 334 Eagle Bend Drive.  On March 23, 2007, Ewings filed a state court complaint against RMRC based on the buy sell agreement[2].  Ultimately, a special jury verdict was entered on March 6, 2009 against RMRC in favor of Ewings.

In 2007 the decision was made to wind down RMRC and Manning was instructed and employed to wind down RMRC's operations, for which Manning was paid.  Certain transfers of funds from RMRC to some of the Defendants took place.  Defendants deny Plaintiff's allegations

---

[2]Defendants deny the complaint's allegations of mold and construction defects in RMRC's development properties.

that the transfers were prohibited, or that they were of substantially all of RMRC's assets, or that the transfers or assets were disguised or concealed from creditors, or that RMRC was insolvent or rendered insolvent at the time of the transfers[3].

Other than noted as above, Defendants generally denied the claims and allegations set forth in Counts One through Seventeen.  Later in their answer Defendants assert ten affirmative defenses, including that the claims may be barred by applicable statutes of limitations ("SOL"), and that the Plaintiff lacks standing to pursue some or all of the claims for relief.

Defendants filed their Motion to Dismiss on July 6, 2012.  The Motion seeks dismissal of Counts One, Three, Four, Five, Six for failure to state a claim upon which relief can be granted, and seeks dismissal of Count Sixteen for lack of standing.  Plaintiff filed his response on August 2, 2012, setting the Motion for hearing on September 6, 2012.  Movants filed their reply on August 15, 2012.

## DISCUSSION

Movants' Motion to Dismiss is based on part on Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and Rule 12(b)(1) for lack of standing.

### I. Rule 12(b)(6).

For a long time in the Ninth Circuit the rule stated that a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Evanns v. AT&T Corp.*, 229 F.3d 837, 839 (9th Cir. 2000); *Wright v. Riveland*, 219 F.3d 905, 912 (9th Cir. 2000).

---

[3]Specifically, Defendants deny the allegations of paragraph 26 of the complaint that G.E.P. received a total of $7,322,500.00 from RMRC and that the Patch Trust received $675,000.

5

A district court explained:

> During this threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *overrruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984). Moreover, the court must accept PaineWebber's factual allegations as true, liberally construing the complaint and drawing all reasonable inferences in PaineWebber's favor. [*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)]; *Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir.1996).

*PaineWebber Inc. v. Banyan Corp.*, 2000 WL 1132095, *2 (D. Or.)

The United States Supreme Court explained a more recent applicable "plausibility standard" under Rule 12(b)(6) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial

6

experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50 (2009); *see also*, *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011).

The Ninth Circuit later explained:

> [W]e begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. We disregard threadbare recitals of elements of a cause of action, supported by mere conclusory statements. After eliminating such unsupported legal conclusions, we identify well-pleaded factual allegations, which we assume to be true, and then determine whether they plausibly give rise to an entitlement to relief. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; that is, plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

[*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)] (citations, alterations and internal quotation marks omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

*Alvarez v. Chevron Corp.*, 656 F.3d 925, 930-31 (9th Cir. 2011) (quoting *Telesaurus*).

The Court further notes that in *Telesaurus* the court concluded that the district court abused its discretion by granting a Rule 12(b)(6) motion to dismiss while denying leave to amend a complaint. 623 F.3d at 1006. The court wrote that leave to amend can be denied if a court

determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, . . . [citing case], or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)." *Telesaurus*, 623 F.3d at 1003; *Alvarez v. Chevron Corp.*, 656 F.3d at 935.

Defendants have not moved for a more definite statement under Rule 12(e). Defendants seek dismissal of several Counts based on their SOL and standing arguments, without allowing for the possibility of leave to amend, which appears necessary before dismissal under *Alvarez* and *Telesaurus.*

**II.  Motion to Dismiss Counts One and Three.**

Movants request dismissal of Counts One and Three based on § 548(a) because the Trustee is seeking avoidance of transfers made outside the 2-year lookback period stated in § 548(a). They argue that 18 of the alleged transfers occurred prior to May 3, 2008, which is more than 2 years before RMRC filed its bankruptcy petition in 2010. Plaintiff responds that Defendants' Motion is procedurally and substantively deficient because it seeks only a limitation of damages for transfers beyond the 2-year limit of 548(a)(1), and contends that RMRC transferred funds within the 2 year lookback. Movants reply citing *In re Circle Y of Yoakum, Texas*, 354 B.R. 349, 355 (Bankr. D. Del. 2006), and other cases where partial dismissal of §§ 547 and 548(a) fraudulent transfer claims was granted to the extent of transfers which occurred outside the then-one year time limit.

Section 548(a)(1) provides that the trustee may avoid any transfer "that was made or incurred on or within 2 years before the date of the filing of the petition." The date of filing of

the Debtor's bankruptcy petition is May 3, 2010. Exhibit A attached to the complaint, the allegations of which are taken as true, lists at least five (5) transfers from RMRC to GEP or the Patch Trust made after May 3, 2008.

Movants move to dismiss Counts One and Three based on the 2-year lookback period of § 548(a), to the extent they seek to avoid transfers made more than the 2-year period. The 5 transfers which Ex. A shows occurred within 2 years requires that Movants' Motion to Dismiss Counts One and Three must be denied, because at this point the record shows 5 transfers within the 2-year lookback period.

A leading commentator on Rule 12(b)(6) writes: "[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1356 (2004). This Court considers the partial dismissal of claims which occurred in the case *Circle Y of Yoakum, Texas*, which Movants seek in the instant case, to be inconsistent with the plausibility standard of *Iqbal* and *Twombly* and the admonition from Wright & Miller.

The specific provisions of Counts One repeat the statutory elements of § 548 and § 550, but paragraph 29 realleges and incorporates the allegations contained in paragraphs 1 through 28 which allege with detail the transfers upon which Counts One, Three, Four, Five and Six are based. Likewise Count Three's paragraph 36 also realleges and incorporates the 35 preceding paragraphs. Taking into account Movants' admission that many several of the transfers are within the 2-year lookback period, that is sufficient for this Court to draw the reasonable

inference that the Defendants are liable for the misconduct alleged with respect to the fraudulent transfers under the above-quoted discussion of the plausibility standard from *Iqbal* and *Twombly*. 556 U.S. at 678-79, 129 S.Ct. 1937. Counts One and Three contain sufficient factual matter, accepted as true, to state § 548 claims that are plausible on their face to a certain extent[4]. *Id., quoting Twombly.* Similar reasoning applies to Counts Four, Five and Six.

### III. Counts Four, Five and Six.

Counts Four, Five and Six assert fraudulent transfer claims under Montana statutes, §§ 31-2-333(1)(b), 31-2-334(1) and 31-2-334(2). Movants contend that Montana law determines the applicable statutes of limitations. They argue that Counts Four and Five are barred because they are not brought within the 4-year statute of limitations under § 31-2-333 and § 31-2-334. § 31-2-341.

Movants calculate the 4-year SOL from the May 3, 2010, petition date back to May 3, 2006. Movants contend that the alleged transfer of $2 million by RMRC on November 1, 2005, is not avoidable because it took place more than the 4 year SOL period before the petition date. The Trustee repeats his argument made with respect to Counts One and Three, i.e., that Exhibit A shows several transfers made within the 4-year SOL. Ex. A supports the Trustee's argument. All except 1 of the transfers shown on Ex. A occurred on or after May 3, 2006.

The first paragraphs of Counts Four, Five and Six (paragraphs 41, 44 and 48) each realleges and incorporates all preceding allegations, which contain sufficient factual matter, accepted as true, to state a claim that is plausible on its fact to some extent. *Iqbal*, 556 U.S. at

---

[4]This decision does not mean that the 2-year lookback period under § 548 does not apply, or that it may not be the basis for a defense at trial against Plaintiffs' claims for relief regarding the older transfers, or a motion made under a different rule that Rule 12(b)(6).

678, quoting *Twombly*, 550 U.S. at 570.  The Court concludes that Counts Four and Five satisfy

the plausibility standard and Movants' Motion to dismiss Count Four and Five must be denied

based on the record at the present time showing numerous transfers occurring within the 4-year

SOL.

As to Count Six the same reasoning applies and requires that Movants' Motion to dismiss

Count Six is denied.  Movants move to dismiss because it was not brought within the 2-year

statute of limitations of § 31-2-341(3), which they calculate back to May 3, 2008, and they argue

that 18 of the 23 transfers alleged by the Plaintiff were made more than 2 years before the

petition date.  Plaintiff objects that dismissal is improper and Rule 12 does not provide for

limitations of damages.  Defendants move to dismiss Count Six, but their own argument states

that 5 of the transfers occurred within the 2-year SOL so Count Six satisfies the plausibility

standard to some extent.  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570.  Therefore,

Movants' Motion to dismiss Count Six for failure to state a claim under Rule 12(b)(6) must be

denied.

### IV.  Count Sixteen – Alter Ego.

Count Sixteen begins like the other Counts, at paragraph 94 by realleging and

incorporating by references the allegations contained in paragraphs 1 through 93.  Complaint at

page 18, paragraph 94.  Paragraph 94 then states: "This allegation is pled in the alternative to

Counts One through Eight and Count Thirteen set forth within this complaint."  Movants argue

in their reply that even if those Counts were a legitimate basis for an alter ego claim, "the fact

that Count Sixteen if pled in the alternative makes it logically impossible for those counts to

serve as such a basis."  Movants' argument is contrary to the plain language of Rule 8(d) of the

11

"General Rules of Pleading."  Rule 8(d)(2) and (3) plainly state:

> (2) Alternative Statements of a Claim or Defense.  A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) Inconsistent Claims or Defenses.  A party may state as many separate claims or defenses as it has, regardless of consistency.

Based on this expansive rule of pleading, whether or not paragraph 94 in Count Sixteen may be read as inconsistent or pled in the alternative, such is plainly allowed under Rule 8(d) and cannot be grounds for dismissal of Count Sixteen.

Count Sixteen avers alter ego claims that Patch, GSI, G.E.P., and Patch and John Does to be determined are alter egos of RMRC and used the entity structure to justify wrong and perpetuate fraud, and that their assets should be determined and used to satisfy claims of creditors in this case.  Movants contend that all other Counts seek to recover amounts of transfers and do not support a blanket alter ego claim against all their assets.

Movants move to dismiss under Rule 12(b)(1) for lack of standing.  They argue that the Trustee lacks standing under the holding of *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) and Montana law.  Movants argue that an alter ego claim is a remedy to hold a party accountable on a particular claim for which recovery is allowed, and that the trustee has no standing to recover from Movants simply based on RMRC's debt.

The Plaintiff responds that Count Sixteen does not assert an alter ego claim, but instead requests a declaratory judgment that Defendants are alter egos of each other.  Plaintiff argues that the basis for the Trustee's claims for relief are Counts One through Fifteen of the complaint, of which there is no challenge to his standing, and his alter ego Count Sixteen is the Trustee's

remedy.  The Trustee contends that he has standing to bring a cause of action that the debtor corporation could have brought.  The Trustee argues that *Ahcom* does not prohibit him from piercing the corporate veil, but rather clarified that a trustee cannot bring a "made-up" cause of action such as an alter ego claim simply on the grounds that all creditors are affected.  With respect to the Trustee's averment in paragraph 104 that Defendants' assets should be used to satisfy claims of creditors in this bankruptcy case, the Plaintiff argues that such a statement is wholly consistent with the statutory duties of a trustee.

The Court agrees, and views the Trustee's allegations in paragraph 104 of the complaint under Count Sixteen as little more than a statement of the Trustee's statutory duties under 11 U.S.C. § 704(a)(1) to collect and reduce to money the property of the estate, and to distribute the property of the estate according to the provisions of 11 U.S.C. § 726.  Movants have not moved for a more definite statement under Rule 12(e), which might clarify the Trustee's intentions. This Court finds lack of sufficient cause to dismiss Count Sixteen due to any lack of clarity in paragraph 104.

In Montana, in certain instances courts have disregarded the corporate form, and the general immunity attendant thereto, by imposing personal liability on controlling shareholders. *Flemmer v. Ming*, 621 P.2d 1038, 1042, 190 Mont. 403 (Mont. 1981).  In such instances, the courts have "pierced the corporate veil."  In discussing the doctrine of "piercing the corporate veil, the Montana Supreme Court instructs:

> Piercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate entity. Because the remedy is equitable, no concrete formula exists under which a court will disregard the separate identity of the corporate entity. Use of this remedy depends entirely upon the circumstances of each case. See Comment, *Piercing The Corporate Veil in Montana*, 44

> Mont.L.Rev. 91, 92-93 (1983). However, this Court has previously required two general factors to be present before a court will disregard the separate and distinct identity of a corporation: (1) The corporation must be a mere agent or alter ego of the parent company; and (2) the corporate cloak must have been used to defeat public convenience, justify wrong, perpetrate fraud, or to defend crime. *State ex rel. Monarch Fire Ins. Co. v. Holmes* (1942), 113 Mont. 303, 307-08, 124 P.2d 994, 996.

*Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960, 236 Mont. 493 (Mont 1989).

This language supports the Trustee's contention that his alter ego claim in Count Sixteen is an equitable remedy, which paragraph 94 relates back to his prior claims for relief. The Court does not view his statement in paragraph 104, which asks that the Defendants be determined alter egos of the Debtor and their assets determined to satisfy creditors claims, as anything more than requesting a declaration of alter egos as equitable relief as allowed in Montana under *Hando*, and not a separate and distinct alter ego claim against Defendants to treat all their assets for purposes of all the Debtor's debts, which is prohibited by *Ahcom*. 623 F.3d at 1252.

Movants' Motion to Dismiss Count Sixteen is based on Rule 12(b)(1), which governs dismissal for lack of standing under Article III of the United States Constitution. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1087 n.6 (9th Cir. 2011). To satisfy Article III's standing requirements a plaintiff must show (1) that he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of the defendants; and (3) that is it likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Maya*, 658 F.3d at 1067, quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) [other citations omitted]. A reading of the complaint satisfies this Court

14

that the Plaintiff has satisfied Article III's standing requirements for Count Sixteen.

Again, paragraph 94 realleges and incorporates all preceding paragraphs and fifteen Counts, which describe actual concrete and particularized injuries in fact resulting from the alleged transfers from RMRC traceable to the challenged actions of the Defendants. The Court without difficulty concludes that a favorable decision is likely to redress the injury, which satisfies the requirements for Article III standing from *Friends of the Earth*. *Maya*, 658 F.3d at 1067; *Friends of the Earth,* 528 U.S. at 180-81.

Movants rely on the Ninth Circuit decision *Ahcom*, in which the court concluded that California law does not recognize a general alter ego claim or cause of action, which the court describes as a "made-up cause of action because all creditors are affected" that would allow a corporation and its shareholders to be treated as alter egos for purposes of all corporate debts. 623 F.3d at 1252. Clarifying a California case, *Stodd v. Goldberger*, 73 Cal.App.3d 827, 141, Cal Rptr. 67 (1977), the Ninth Circuit wrote:

> These examples illustrate that *Stodd* was not, as the Smedings maintain, creating a "general alter ego claim." Instead, *Stodd* was attempting to distinguish established "right[s] of action" *that are properly brought by the trustee (fraudulent conveyance*, conversion, and theft, to take the examples from the list above) from those that are not. Under *Stodd*, *the trustee can sue for the former* but not for the latter. *Id.*

*Ahcom*, 623 F.3d at 1252. (Emphasis added).

Paragraph 94 begins Count Sixteen by realleging and incorporating the preceding 93 paragraphs, which includes fraudulent transfer claims under both bankruptcy statutes and Montana statutes in Counts One through Six. *Ahcom* specifically listed fraudulent conveyance actions in the italicized language quoted above as actions upon which the trustee can sue. Count

15

Sixteen provides for the equitable remedy recognized under Montana law. *Hondo*, 771 P.2d at 960.

The Court concludes that under *Maya* the Plaintiff has satisfied the threshold requirement for Article III standing, and further concludes that under *Ahcom* and Montana law the Plaintiff may sue for fraudulent conveyance and utilize the equitable remedy of alter ego to recover. Movants' Motion to Dismiss Count Sixteen will be denied.

**IT IS ORDERED** a separate Order will be entered denying Movants' Motion to Dismiss Counts One, Three, Four, Five and Six for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and denying their Motion to Dismiss Count Sixteen under Rule 12(b)(1).

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

16